[No. 27803.    Department One.    December 24, 1940.]

C. W. HAZARD, *Appellant*, v. C. E. O'NEILL COMPANY
*et al., Respondents,* GEORGE M. HAZARD,
*Defendant.*[1]

¹Reported in 108 P. (2d) 660.

*Schaefer & Hall*, for appellant.

*G. E. Lovell* and *Raymond Sly*, for respondents.

ROBINSON, J.—On May 1, 1933, Skamania county entered into a contract with respondent C. E. O'Neill Company, then and until January 1, 1935, known as Columbia Power and Investment Company, to construct a secondary highway known as lateral highway No. 8.

The evidence is undisputed that, in making the bid, the Columbia Power and Investment Company acted for George Hazard, who, at that time and until two days before the letting of the contract, held a third interest in the company. Mr. George Christensen, the then vice-president and treasurer of the company, testified as follows:

"Q. The Columbia Power & Investment Company entered into a contract with the county? A. With the county, yes. Q. That was just sort of for Mr. Hazard? A. It was done entirely for Mr. Hazard. Q. You were just a nominal party? A. We had no interest in the contract at all. He furnished us the figures, and we used his figures to make up the bid, and furnished the bond. Q. And then he was to run the job his own way? A. Yes, it was his job."

On May 27, 1933, the Columbia Power and Investment Company entered into a written agreement with Hazard as to his interest in the road contract. Among other things, this agreement provided:

"It is hereby agreed;

"(1) That the party of the second part will do all the work and labor and furnish all the materials, supplies and equipment included in and incident to the construction of said road in accordance with the bid, contract and plans and specifications therefor, and to the satisfaction of the engineer in charge and to the satisfaction of the Board of Commissioners of Skamania County, Washington, and the Highway Department of

the State of Washington in exactly the manner that may, or might be, required of the party of the first part and within the time required for the completion thereof. . . .

"(3) The party of the second part agrees to make all required payments due the state of Washington for premiums due upon the payroll of the party of the second part for both Industrial Insurance and Medical Aid, and all other charges which may be lawfully assessed against said work or charged to said contract."

It was further provided that Hazard should pay all claims against the work as it progressed, and, if he failed to commence the work and prosecute it in the manner required by the contract, that

". . . the party of the first part [Columbia Power] may take over the performance of the same and complete said work at the expense of the said party of the second part."

The contract goes on to recite:

"(8) It is the intent and purpose of this agreement that the party of the second part shall take over the contract for the work herein mentioned and shall do and perform the same in exactly the same manner as though he had bid therefor and the original contract had been awarded to him, and that the party of the first part shall not suffer any loss, expense or damage by reason of its legal obligation arising from the execution of said original contract, and that it shall have the right to fully protect itself against any such loss, damage or expense in any lawful manner; and that the said party of the second part shall have all the rights, privileges and benefits thereof and assume all obligations thereunder, including the obligation of the party of the first part to its bondsman. The cost of bond, as well as all other expenses incident to said contract, shall be paid by the party of the second part."

This contract was filed with the commissioners, and

it bears the following endorsement, signed by the three commissioners of Skamania county:

"This sub-contract approved this 6 day of Sept, 1933."

It is evident that, upon reading the two instruments together, we have a violent contrast between form and substance. In form, the ·Columbia Power and Investment Company remained the contractor, and George Hazard, a subcontractor and its agent; but, in substance and with the approval of the county commissioners, George Hazard became the principal and the Columbia Power and Investment Company his agent, with nothing more to do than to receive the contract price from the county and turn it over to Hazard.

A month after the county commissioners had given their approval to the contract between Columbia Power and George Hazard, Hazard orally employed his brother, C. W. Hazard, the plaintiff in this action, to haul and spread gravel on the road.

In April, 1934, the county, not having sufficient funds to complete the project, terminated the contract by resolution of the commissioners, the work, however, being accepted to station No. 141; and the director of highways was formally notified of that fact. On July 2, 1934, the final payment to Columbia Power and George Hazard, the order using both names, was ordered by the county commissioners, less the amount of filed claims.

C. W. Hazard had filed no claim, nor did he file any during the period of over a year while another claim was being litigated, nor until it had been disposed of and the money in the hands of the county belonging to his brother and subject to claims against the work, had been completely disbursed. On January 16, 1936, he filed a claim against the C. E. O'Neill Company

(formerly called Columbia Power and Investment Company) and against the bond. The claim was for an alleged balance of $987.40, due for hauling and spreading gravel on the road. In March, 1936, he began this action, as his counsel expresses it in the brief filed in his behalf, "seeking to enforce his lien claim against the general contractor and the bonding company."

The respondents answered, alleging, among other things, that the general contract between the county and the respondents was mutually modified and completed, and accepted by Skamania county more than one year prior to the time of the filing of the lien claim, and that said claim was not filed within the time limited by law.

The trial court held that the claim was not timely filed, and dismissed the action against the bonding company. This is alleged as error. It is contended that the thirty-day period within which to file claims against the bond, as provided by Rem. Rev. Stat., § 1161 [P. C. § 9727], does not begin to run until there has been an acceptance by the state of the work done under the contract, and that there has never been such an acceptance.

But we do not read § 1, subd. (b), p. 159, and §§ 11 and 13, of chapter 88, Laws of 1929, pp. 165, 166, and §§ 14 and 17, chapter 41, Laws of 1933, pp. 217, 218, which are relied on by the appellant, as modifying in any way the provisions of § 1161. The acceptance of the work after the completion of the contract "by the affirmative action of the board, council, commission," etc., starts the running of the limitation under that statute. The work in this case was accepted by the board of county commissioners in April, 1934.

It is further pointed out that § 1161 of itself requires the *completion* of the contract, as well as the ac-

ceptance of the work, to start the running of the limitation, and it is contended that the contract in this case was never completed, and that, therefore, the limitation could not run. If the contract was not completed, then the claimant was required to file within a reasonable time after work was discontinued. In the case of *Puget Sound Bridge etc. Co. v. Jahn & Bressi,* 148 Wash. 37, 51, 268 Pac. 169, we said, with reference to § 1161:

"While the statute requires the filing of claims in all instances, it makes no provision with respect to the time of filing, in an instance where the contractor incurs obligations and ceases work before the completion of the contract; particularly so where the abandoned work is never completed. It would seem, therefore, that a condition is presented·where a thing is required to be done and no time is fixed for the doing of the thing. If this be the situation, then the general rule would be applicable, namely, that a claim filed within a reasonable time after the cessation of the work would be timely. Taking this view of the situation, we can not hold that the claims in this instance were not timely filed. They were filed before any adjustment of the differences between the city and the contractor were had or attempted, and no prejudice has resulted to the bondsman."

In this case, the claim was filed more than a year and a half after the adjustment between the county and the claimant's brother had been begun, and, in fact, after it had been completed, and prejudice would result to the bondsman if it should be allowed.

During the trial of the action, the court insisted that George Hazard be made a defendant, and at the conclusion of the trial gave judgment against him for the plaintiff's demand, but dismissed the plaintiff's action as against the O'Neill company. This dismissal is alleged as error.

It can reasonably be inferred from the record that

the trial judge came to the conclusion, or at least strongly suspected, that there was a collusive arrangement between the brothers Hazard that C. W. Hazard should withhold his claim until the claims actually filed had been adjusted and George Hazard had gotten possession of the residue of the fund. By such a plan, the bonding company and the O'Neill company might . be compelled to pay C. W. Hazard the $987.40 which George Hazard, who had received all the avails of the contract, should, in good conscience at least, have paid him. Testimony that, during the adjustment period, George Hazard told an officer of the O'Neill company that he owed his brother, C. W. Hazard, less than two hundred dollars, and the fact that C. W. Hazard did wait a remarkably unreasonable time before making a claim, and until after his brother had received the residue of the fund, would seem to justify such a suspicion.

The trial court found also that the plaintiff was familiar with the terms of the contract between Columbia Power and his brother George. The fact that George Hazard was his brother makes it highly probable that the plaintiff was familiar with George Hazard's true relation to the job; but plaintiff denies that he had any such knowledge, and there is no direct evidence to the contrary. We are of the opinion that the evidence is not sufficiently cogent and convincing to justify a court in holding that the plaintiff's claim is shown to be so clearly collusive and fraudulent that it should be rejected for that reason. Nevertheless, we think the result reached by the trial court should be sustained.

█ The plaintiff, as the court found, admitted that he was not employed by anyone other than George Hazard. It is clear that, if he can recover at all, he can only do so as a third party beneficiary under the

last sentence of the following provision of the original contract between the county and Columbia Power:

"RESPONSIBILITY NON-TRANSFERABLE; The Contractor shall not let, assign, or transfer this contract, or any interest therein or any part thereof, without the consent in writing of the Board [the county commissioners].

"The Contractor shall give his personal attention to the work at all times and shall be present, in person or by duly authorized representative, on the site of the work continually during its progress and shall receive instructions from the Engineer. *Any subcontractor shall be considered the agent of the Contractor, and the latter shall be responsible for all work and material furnished and any indebtedness incurred by such agent.*" (Italics ours.)

Before the plaintiff was employed by George Hazard, that contract was radically changed in accordance with the first paragraph of the contract provision just quoted. The county commissioners, as we have seen, consented in writing that George Hazard, not Columbia Power and Investment Company, should do all the work and labor, furnish all material, supplies, and equipment necessary to perform the contract to the satisfaction of the engineer in charge, the county, and the state highway department; that George Hazard should make all industrial insurance and medical aid payments; and that he should

" . . . take over the contract for the work herein mentioned and shall do and perform the same in exactly the same manner as though he had bid therefor and the original contract had been awarded to him, . . . and that the said party of the second part [George Hazard] shall have all the rights, privileges and benefits thereof and assume all obligations thereunder, including the obligation of the party of the first part to its bondsman."

It is true that there was no general assignment, and

it is further true that George Hazard was called a sub-contractor even in this instrument, and that the commissioners refer to it as a subcontract; but, looking through form to substance, George Hazard stepped into the shoes of the Columbia Power and Investment Company.

At all events, in our opinion, it cannot be found or held that, after the execution of that contract and its approval by the commissioners of Skamania county, George Hazard was an agent of the Columbia Power and Investment Company, within the purpose and meaning of the original contract provision upon which the appellant must wholly rely. The purpose of that contract provision was to give to one furnishing labor or material on the work a direct remedy as a third party beneficiary against that person who was entitled to receive the contract payments from the county. In this case, the person who was entitled to the payments from the county, when the plaintiff began his services and during all the time those services were being performed, was George Hazard.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.